Good morning. Good morning. If it pleases the Court, Morten Brandsburg representing Amerisourcebergen, or ABC for short. I'd request three minutes reserved for rebuttal. Your Honor, we will first argue the Rule 54b issue, since that goes to the very jurisdiction of this Court. The standard for review is abuse of discretion. And the lower court, in this case, abused its discretion when it certified as final a judgment in favor of DWI and against, that's dialysis, and against ABC in the amount of $2.5 million at a time that dialysis was insolvent and ABC had a claim against it of $8 million. In doing so, the lower court impaired the ability of ABC to collect on its claim. Well, okay, but let's focus on what the standard of review is. And I don't doubt that that would be what they would argue. But we understand that the equities are viewed differently by different judges. But isn't it our inquiry limited to whether the district court's 54b certification was clearly unreasonable or an abuse of discretion? Yes. So when you say what's unreasonable, also tell me what the other argument is, too. I will, Your Honor. Okay. The standard is abuse of discretion, as I mentioned earlier. And in Curtis v. Wright, they said it has to be clearly unreasonable. We submit that it was when the district court certified the judgment and thereby impaired the ability of ABC to collect on its $8 million judgment. They – the action was clearly unreasonable. And I'll tell you why. Under 54b, the Court has the right to certify a judgment, even if there are multiple parties and multiple claims, so long as there's no just reason for delay. The question for this Court is what's just reason for delay when the party seeking certification is insolvent and there's a large, an $8 million counterclaim against it? The Supreme Court teaches us that in the ordinary case, when both parties are solvent, the fact that there's a claim against the party seeking certification is not just reason for delay. The reason for that's simple. Both parties are solvent. Both parties will get their judgment in the ordinary course. Prejudgment interest will accrue to both of them. And at the end of the day, both judgments will be valuable and collectible because the parties are solvent. However, the equities change when the party seeking certification is insolvent because the parties are solvent. Well, you know, but that's – I mean, your argument is if that's an absolute  true, the cases say, you know, it's a factor to be considered. But the Supreme Court also says it's not an absolute bar, right? Well, the right – Presumably the district court considered that here because it knew about it. It knew about it, but we don't think that it considered it properly. In the Ryder case, the reason that the equities change is because if you take a look at our case, DWI's judgment will be fully collectible at 2.5. The judgment that ABC may collect – may get at $8 million will be worthless. Well, no. I just put you in the same – maybe it isn't, but just put you in the same position as all the other creditors. No. Well, what's inequitable about that? Well, the Ryder court and the Fifth Circuit in Rockwool analyzed the equities and said that it's wholly inequitable. The Ryder court said that the equities change and that normally when the party's seeking certification is insolvent, it should not be certified, except in unusual circumstances. The Court used the word conceivably. Conceivably it could be certified, and then it gives an example of what kind of conceivable factor might switch the equities. The conceivable factor is if ABC were insolvent, because then DWI would not be able to collect its judgment. In this case, there is no such – there is no such countervailing equity. ABC is very solvent. It has $12 billion in asset and $4 billion of net worth. DWI – Was the court concerned about ABC jumping over other creditors that it would not otherwise have priority of in the bankruptcy proceeding? Or wasn't that somehow mentioned? Yes. The judge did make some findings about what might happen in a bankruptcy proceeding that might be filed at some point in the future. But the court was wrong in its bankruptcy analysis. And even if it were not wrong, there was no bankruptcy at the time. It was not a factor that that court should have considered. Had there been one at some point and then somehow the stay was lifted? That's right. There was a subsequent bankruptcy after this decision and the stay was lifted so that we could proceed with this appeal. Now, both the Riter Court and the Fifth Circuit at Rockwool made it very clear that this result was inequitable and to be avoided. The Riter Court also said in the event that the party seeking certification is insolvent and in the event that this conceivable set of circumstances occur, which would lead the court to grant certification, the next step is the court could grant a 62-H stay so that all the parties would be protected. And this court didn't do that as well. In our case, there is no countervailing equity as the Riter Court would have required. I'm sort of catching an undercurrent in here that maybe the court didn't believe the – felt that your client might have been a little disingenuous in terms of because there was the mention of the – you know, the epigen and then later when – I mean, it's just sort of – it's hard to pull one thing out over the other because the court's dealing with all of those things. But then there was the attempt to amend and the court for false, I mean, products or something and what the court had said was, hey, you knew about this 15 months ago and you knew about it before you filed the lawsuit and now you want to amend this and you're really only doing that because – I mean, that goes to the heart of it. So you're trying – if I allow you to amend it, then I'll have to reopen discovery and then that would delay everything and then that would get you what you want to. And so I'm sensing a little bit of the court feeling that you're trying to do through the back door what you can't do through the front door and this all sort of conflates. Yes. Conflates is the right word. I know you use that word, too. Yeah. I think that that's – I think that the court got that impression. There is nothing in the record that supports it, but it's true that ABC, this client of ours that has 14,000 employees, knew about the procreate issue for a year before it was pled. There's nothing in the evidence that says the attorneys knew about it. And that's really the problem that the court had. The court had a problem. Well, if ABC knew about it, why didn't you plead it? Well, I guess that that's pretty much of a stretch from the standpoint when you're saying you're not going to pay a bill because of some issue. I mean, the best one that I can think of is that they – it's like the heroin dealer that gets soap suds or something. I mean, that they just delivered bunk to you. Your Honor, I think that that misses the point of the 54B analysis. The court below cited two factors to support its certification. One was the size of the judgment, and the other were UCC principles, and neither can withstand scrutiny. As far as the size of the judgment, the court misunderstood what that meant. In the Curtis v. Wright – in the Curtis Wright case and in the Seventh Circuit case in Shiflin, the court cited the size of the judgment as being a factor for solvent parties. But even then, they said the reason it was important was because the prejudgment interest that accrued on those judgments was below market, and therefore, there was economic harm to those parties. In this case, it's exactly the opposite. The prejudgment interest is 10 percent. It was above market, and if anything, that should be a factor that militates in favor of delay and against certification. UCC principles are also unavailing. UCC principles don't affect the ability of DWI to collect its judgment against ABC, which is a factor that the writer court seemed to say was critical with their example. Well, the harm to your client is obviously going to be that you're going to have to pay this $2.2 million in whatever interest that there is, and since they're in bankruptcy, you're never going to get your $8 million. That's correct. And so, and then those $2.2 million are going to go to pay other people off, right? That's exactly right. What do we have to look at in order to give you the relief you want? We have to say, don't we, that it was unreasonable for the court to certify, that the court had no legal basis to certify. But we have to find some reason, and what is the reason? The reason is that by doing so, it took away the right of ABC to collect on its judgment. That's not a test. That's the effect. No, the test is whether there's just reason for delay. All right. And if there were delay, then ABC would be able to settle its judgment against the judgment of D-N-Y. That's been the law for hundreds of years. All right. So that's just reason for delay. But does it have the judgment? Pardon me? Does it have the judgment? It doesn't have the judgment. Okay, so it's not, it has the claim for it. It's got the, it's trying to get the judgment. It has the claim, and the just reason for delay is so that it can get that judgment. That's exactly what the Fifth Circuit said in Rockville. That's what we believe the right of the court to say. So that is the just reason for delay, so that both parties can set off their mutual claims, and only the net amount due would be paid to each party. You see, maybe I'm wrong, and you can correct me, but I'm assuming that we would have to say that the court was compelled to do what you have suggested, and that by not doing it as a matter of law, it erred. I think that what you have to say is what the right of the court said, and that is that when you look at this situation, the equity is shared. And unless you can demonstrate there's some compelling equity for certification, then certification has to be denied. Well, we have to say the district judge was clearly unreasonable. That's correct. All right. Mr. Brandenburg, you used over half your time, and you're still on Issue 1. Okay. Let me go to Issue 2. I think there's at least two issues I'd like you to hit. One is the stay and whether there's some different criteria that govern that, and the other one is on the amendment. Let me go to Issue 2 that Your Honor mentioned. Under 62H, the court had the discretion to issue a stay. We think the standard is an abuse of discretion. And is that different from clearly unreasonable? It's similar. I think that they're both abuse of discretion standards. The right of court laid out a map, laid out a roadmap of what would happen in this situation, and we think that the district court abused its discretion when it failed to follow that roadmap, and it failed to provide any reason for failing to follow the roadmap other than the same reason that I – that the court issued its 54B certification. That's the reason I ask you. Is it the same standard? No. No, I think the court has to have another reason. Because I agree with you. It looks like the district court sort of conflated the two, right? That's exactly right. The district court gave no separate reason why it did not issue a 62H stay, and we believe it had to under Reiter. It wasn't only Reiter. Reiter is not the only court that suggests that a 62H stay would be appropriate in this case. The Curtis Wright Court talked about it. The Rockwool Court talked about it. In the Seventh Circuit, the Schieffelin Court talked about it. Even the Sioux Court that the appellee cites overturned a 62H stay, but one of the factors that they used was the parties were solvent. So solvency is a key issue in 62H, and this Court never addressed it. The other – the lower court also committed reversible error when it determined that ABC could not invoke the doctrine of equitable setoff. Now, the standard is different here. This is a de novo standard. The lower court was fuzzy in how it reached its decision. On the one hand, it seemed to say that 2717 displaced the doctrine of equitable setoff. On the other hand, it seemed to be making findings of fact that if the doctrine of equitable setoff had been applied, it would be inequitable, immoral, violate bankruptcy principles. And those findings of fact are inappropriate in the context of a motion for judgment on the pleadings. So I'd like to focus on the displacement issue for a moment. The doctrine of equitable setoff permits setoff against the party that is insolvent, even though normal setoff rules would prohibit it. Therefore, it is an exception to the rules that prohibit setoff. I believe that this is a case of first impression in this district, although – or in this – with this Court, although the District of New Jersey found that there was no displacement specifically with equitable setoff. But this Court did deal with a very, very similar issue in the Morgan Guarantee case, where the Court engaged in an analysis of the final payment rule of 3418 of the UCC. And the Court held that the equitable remedy of restitution was not displaced by the final payment rule of 3418. And the principles to be gleaned from that case that are relevant to our case is, one, the UCC drafters intended that the courts would use 1103 and equitable principles to create exceptions to the UCC provisions. Two, judges have a duty to apply those equitable principles unless they were displaced. Three, only a specific express provision in the UCC limiting remedies constitutes displacement. And four, the insolvency of an obligor militates – in that case, it was Johns Mansville – the insolvency of an obligor militates in favor of equitable remedies and against displacement. Applying that to our case, there is no express provision in 2717 that – that displaces equitable principles. The policy behind 2717 would suggest that equitable setoffs is appropriate. The policy is we're not going to allow setoff of two separate contracts because we want parties to continue to operate in the ordinary course, even though they may have a dispute. Well, that makes no sense. If one of the parties is insolvent, there's not going to be the continued operation. Third of all, this is a very limited exception, just like it was in the Morgan guarantee case. The exception is that setoff would apply only if the party against whom setoff is sought is insolvent. So equitable setoff should be a remedy that would be available to ABC. That's it. How much time did you say you wanted to reserve? Five minutes. You're at 411. Okay. I will reserve and rest on our pleadings for the balance of the item. Oh, I'm sorry. I think I said three minutes. Well, that's what I thought you said, but then I believed you. Okay. Go ahead. Let me – let me just go for a moment to the issue that Judge Tashima mentioned, and that is the lower court also abused its discretion when it failed to permit ABC to amend its reply to counterclaim. That reply was filed three months after the original reply, three months before the scheduling order had a deadline for filing such replies, five months before the discovery deadline was to expire, at a time when discovery was in its infancy and at a time when no trial had been set. The court below relied upon undue delay and prejudice. It did not find bad faith. It didn't find dilatory intent. Now, let me focus on the prejudice issue, and I'll probably do it in the three minutes that I have when I come back because there's not enough time right now, but I will focus on that when I come back. Okay. Thank you. Thank you. Good morning, Your Honors. Dan Bagatelle on behalf of the Appellee Dialysis West. If we were dealing strictly with equity, you might not have come. Excuse me, Your Honor, I didn't hear you. If we were dealing strictly with equity, you might not have come. Well, Your Honor, we believe the district court did not abuse its discretion. This is an equitable issue primarily. There are some subsidiary issues of law. But we submit the district court got this case exactly right, as Judge Callahan observed. It saw ABC's conduct for what it was, which was an improper exercise of self- help set off to hold on to millions of dollars that it owed Dialysis West, followed by a series of delay tactics to force stall entry of judgment to that effect. But they're going to take it in the, you know, I mean, I said that, but they're also going to take it because they're claiming that you owe them $8 million and they have to pay you $2.2 million and you're in bankruptcy and they're never going to get it. Well, they will be in bankruptcy with the other creditors and they can make their claim along with the other creditors. Their $2.2 million will pay other people before, you know. It will be allocated among the various creditors. But basically what we submit happened in this case was that ABC realized that it was in trouble under UCC Section 2-717 because it could not set off the two contracts. It knew that Dialysis West was going to be able to collect that money right away. And in contrast, ABC was going to have to wait a few years while it proved up its claim and it had to wait for all the third-party and fourth-party claims that had been filed in the interim to be resolved. So what it did is it tried to gum up the works. It tried to retract its admission and insert an issue of fact regarding the bona fides of another drug called Procrit. And the district court saw through that gamesmanship and we submit that. All right. I think that's a merit. But, you know, assuming we all agree with you on that, I still have the problem with, you know, the district judge seemed to have approached this 54B from the wrong end because I think Ryder and Curtis Wright appears to say that when the party is insolvent, the equities sort of shift and the burden shifts. So they have to find a reason why the 54B should be granted, not why it should be denied. And, you know, the district judge seemed to have ignored that on the certification. Well, let me address the Rule 54B certification. As you've recognized, Your Honor, it is an abusive discretion standard and it's routine for courts to require payment on one contract while the parties litigate their disputes on another contract. Alleged insolvency is one of many factors to be considered in the equitable balance, but it's not an absolute trump card. I know that. The word the district court used, though, was that conceivably that that might not be decisive, but you have to have some reason why it's not. And I don't think the district court gave a reason why it's not decisive. Well, I believe it gave several reasons. Not only were the merits separate and not only were the amount of money large, but most importantly, what ABC was trying to do was get the very relief that Section 2-717 of the UCC would have forbidden. It was trying to make an end run around the governing law. And that, frankly, is inequitable because there are other creditors involved. It's not simply a situation between these two parties. What ABC was trying to do was engage in self-help set off in a variety of ways. Tried to do it under the UCC. It couldn't. It tried to do it by way of opposing 54B and Rule 62H. Your Honor, they tried to do this in numerous ways and the law simply did not require it. The district court was well within its discretion to say it was not mandatory to withhold entering Rule 54B judgment. I actually think that's quite related to the merits, Your Honor. If the court would like to reach that issue, I'm happy to address the propriety of denying the set off because I think it's not really a jurisdictional question. It's really well wound up with the merits because the question is, was a set off proper or improper? And I'd be happy to reach that question if Your Honor would like. On that issue, we come to this court with an agreement that the set off was improper under UCC Section 2-717. That's no longer contested. They've made an argument under the contract, but I think the district court handled that exactly right. Section 20 of the party's vendor agreement did not provide for set off. It was simply a return provision that allowed ABC to return both conforming and nonconforming goods. So your position is it was not ambiguous? Oh, not at all. It simply says nothing at all about a set off, right? Now, there may be other remedies under the law, but that provision didn't displace the UCC provision. So what we're left with here is an argument for non-UCC equitable set off. And the overwhelming majority of courts to have reached that issue have agreed that UCC Section 2-717 did displace the common law. There is one unreported district court case from New Jersey that doesn't address the other case law. But the overwhelming majority of the cases so hold.  under the same contract. So has it been addressed in this circuit? I don't believe it has, at least not in a report. Counsel was correct on that point? That is correct. Now, he's arguing for an exception in cases of equitable and an equitable exception in cases of insolvency. But there simply is no such exception. The UCC repeatedly addresses insolvency. There have got to be three dozen references to insolvency in the UCC. They address it in the context of buyer's remedies on seller's insolvency, seller's remedies on buyer's insolvency. They didn't include an exception here. So what you're saying is he's asking us to go where no court has gone and the UCC has specifically not gone? Exactly. We submit that there is no right to an equitable set off. And even if there were, in theory, the district court addressed the only possible equity that there was, the only possible equity was insolvency, and the district court considered that and found that that equity did not override the rights of other creditors that might be resolved in the event that dialysis went bankrupt. So it really is at best on their side an issue of equitable discretion, and the district court decided, one, it's not available as a matter of law, and two, even if it were available as a matter of law, I in my discretion am deciding that I'm not going to allow you to do that set off. And the district court was, I think, right on both scores. And Mr. Bransburg is going to address prejudice when he comes back. So my question to you would be, how would you have been prejudiced if the district court had allowed ABC's amendments when ABC claimed that significant additional discovery would not be required and there was five months of discovery time remaining and the district court had not set a trial date? Okay. I think there are three kinds of prejudice, and I'd like to set them out for you. First of all, we have to keep in mind that this was a motion filed to evade a pending motion for judgment on the pleadings. Now, this court has repeatedly recognized that such motions are disruptive and disfavored. In this case, Dialysis West was trying to collect $2.25 million so it could stay afloat. So there's simply that part of the disruption, both to Dialysis West and the judicial process. Moreover, on the issue of what discovery would be required, the district court was absolutely correct to find that this addition of this new claim at this late date would have greatly complicated it. Well, additional discovery just means you have to defend on the merits, but having to defend the claim on the merits can't be prejudiced. Otherwise, you know, every amendment would be prejudicial. No, Your Honor. I think, first of all, there is a distinction when a motion is filed in the face of a pending dispositive motion. No, but see, the problem I have in this case is this. I mean, you stipulated to a six month continuance of the last day to amend pleadings, right? Yes, we did. All right. And this was within that period of stipulation. It seems to me like sandbagging. If you give the party, you know, six months extension to file an amendment and then they try to do it. And then both the court and the other side jump on him and say, it's not timely. No, Your Honor. I think the case law is quite clear that the simple fact that it was within the time to amend the pleadings does not mean that it is timely. The case law, I think, is quite clear that, you know, if you act within the time set by the pre-trial scheduling order, then presumptively it's timely. Well, that's the Rule 16 standard, but the Rule 15 standard still has to be complied with. And I think the district court was correct, if I can explain in finding that there would have been a huge amount of additional discovery that would be required. So what? You had a lot of time left for discovery. Well, we had six months, but we hadn't made very much progress. Well, you could have gotten an extension of the discovery cutoff. I don't see the prejudice because you have to conduct discovery. Well, that's true in every case. Well, if I can explain what the additional discovery would have been, maybe it would be more clear. First of all, we have to keep in mind what the business is here. These parties were distributors of products. And basically, Dialysis West bought product and resold it down the line. So when we were sued, we had to bring in our supplier who brought in their supplier. So we have a whole lot of additional parties that are going to be brought in. Now, to some extent, those parties overlapped, but not completely. So we were going to have upstream pedigrees of the drugs that were different. But drugs also didn't go to the same places downstream. We would have had to figure out exactly where each of those boxes went. What are you saying? This is a complex case. Extremely complex. That means you need more discovery. But there are lots of complex cases with lots of discovery. I just can't see that as a prejudice. Well, I think it was within the district court's discretion to find that it would greatly complicate the case and throw out the existing schedule. Moreover, there was evidentiary prejudice, because I think actually they point that out in their reply brief, that Dialysis West's records were not all that good at the time we were in discovery. We didn't know exactly where. Wait a minute. Wait a minute. To have prejudice from the record point of view, you have to show that the records were properly destroyed between the time that the first pleading was filed and the time the second pleading was filed. There's no showing like that. Well, I think what we have is the records were poor, but we also would have had the problem of having to go back a couple of years and ask people what their memories were to figure out what exactly, where this drug came from, where it went to. So that's the additional part. It's not that the records came. It's the same thing you had to do with the other drugs. Yes. But what's the prejudice? It's the same burden you have with respect to the rest of your case. That was a problem with the other drugs. I know that, but that doesn't make it prejudicial because you have a tough case. Well, actually, I think it was a tough case in a lot of ways, but I think it was within the district court's discretion to determine that it would have been a tough case. Well, you keep saying that, but you have to show me the prejudice that accrued to you would have accrued if the amendment were granted. I haven't seen the case yet. Well, Your Honor, I think I've made the best case I can. But let me move to the alternative ground that we made below, which was that the amendment was futile in any event because that's an issue of law. The district court didn't reach it, but it is an issue of law that you all can reach, essentially, de novo, even if the judge had reached it. Did you brief that alternative ground? Yes, we did, Your Honor. Give me the page so I can be sure to look it up. I don't have my brief in front of me, but the briefing is on futility and addresses section 2-607 of the UCC. And it was also briefed below, Your Honor. This was an issue that was raised in front of the district court. And the issue there is UCC section 2-607 requires the seller to notify the buyer of breach or be barred from any remedy whatsoever. And the parties here are merchants, so this requirement is construed strictly. Moreover, that burden is a burden to plead and prove. It's a condition precedent to the claim. And they simply didn't meet their burden. If the notice is considered to be the complaint itself, that was 15 months after discovery of the breach by their own admission. And under the Arizona Supreme Court case, Pace v. Sagebrush Sales, that's clearly untimely as a matter of law. The Pace v. Sagebrush Sales involved only a four-month delay. Here we've got a 15-month delay. It's also a perishable product. So what they're relying on primarily is this e-mail that actually appears in the record at ER-144-145. And that is an e-mail that was sent to Dialysis West, and at the top it says, look at this. Below, there's a discussion of an announcement by the manufacturer that there was some tainted Procrit and some tainted Epigen in the marketplace. The e-mail, look at this, said nothing about the Procrit in particular. It said nothing to indicate you have sold us lots of Procrit that are within this suspect lot numbers. There was simply no notice of any problem with the Procrit that was sold. The only notice that we got was much later, 15 months later, when they moved to amend. Of course, they didn't include that in the complaint that they filed just a few months later. So we simply had no notice of breach. And as a matter of law, that means that the amendment was futile, and we don't even have to reach the issues of undue delay and prejudice and dilatoriness. If your honors don't have any further questions, I'm willing to sit down. Does anyone have any? No. No. Got it. We have our questions answered. Thank you. Let me address prejudice quickly. As far as discovery goes, I think Judge Tsushima was right. There is no prejudice. And the point, the time period to look at is the three months between the time that the original response to the counterclaim was made and the time that we filed the motion to amend. During that three months, there were no depositions. There was nothing that took place in discovery that was at all prejudicial. As far as new parties, counsel mentioned that there would be many new parties. However, DWI has not identified one new party that would have to be named. The district court didn't identify one new party that would have to be named. We don't concede that there would be any new parties that would have to be named. We don't, and the record is devoid of that. The district court also said that this conflicted with the admission that we made in the original reply. Well, that's true, but that is what happens in substantive amendments all the time. What didn't happen is that DWI did not rely upon that admission to its detriment and change its position. So we think that there's no prejudice. What about the futility argument now? Well, the futility argument we think does not work either. This was at the initial stage. This is normally an issue for the trier of fact. And it's a 12B standard to look at it. The Court would have to determine that there's no set of circumstances under which we could have prevailed. And we set forth in our reply memorandum, I think, nine facts that we would prove if given the opportunity to. It was just too early to make that decision, and the lower court, I think, recognized it because they didn't even get to it. I'd like to turn to the full credit issue in the vendor agreement. The vendor agreement dealt with the propriety of the pharmaceuticals and whether or not they'd be genuine. And Paragraph 20 said that we'd be entitled to full credit for any goods to be returned. Now, the question is, what does full credit mean? Well, it sounded like it's just like if I buy something and then I don't like it and I take it back to the store. I can't say, well, you know, I'd like a set-off of this other thing that I bought before. Let's take that example exactly. I buy a shirt and I don't like it. I take it back. I get a store credit. He's got my position and the Court's position. I would have to use that credit to buy the same shirt again. Well, the full credit means I can take that credit and go buy a tie. I go to the counter. I take the tie. The clerk says, give me $50. I say, I give you a credit. It's exactly what this full credit is about. And I think that it unambiguously supports our position that we could apply this full credit against any amounts that are due. But even if it doesn't unambiguously support KDC's position, it's at least ambiguous, and therefore it should not have been decided in this procedural posture. My time is over. Thank you. Can I ask one question?  When you say it's ambiguous, do you mean the statute's ambiguous? No, no. There's a full credit provision, paragraph 20. What are you talking about in the sales agreement? In the vendor agreement. All right. Thank you. All right. Thank you, counsel, for your arguments. This matter will now stand submitted.
judges: Farris, Tashima, Callahan